IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal Number 09-305 |
| | ) |
| REGGIE HARRIS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

On December 18, 2009, Defendant Reggie Harris ("defendant") filed a motion to revoke order of detention. (Doc. No. 40.) This court held a hearing on January 12, 2010 and January 27, 2010, at which evidence and proffers of evidence were presented. Taking into consideration the evidence presented at the hearing, the pleadings and record in this case, and the arguments of counsel, this court denied defendant's request for release. This memorandum opinion and order sets forth the reasons for the court's decision, which were detailed on the record.

*Background*

**I. Procedural Background**

On December 1, 2010, a grand jury returned a superseding indictment at Criminal No. 09-305 charging defendant in count three with conspiracy to retaliate against a witness or informant in violation of 18 U.S.C. § 1513(f). (Doc. No. 30.) The maximum sentence for count three is a term of imprisonment of not more than twenty years. (Doc. No. 31.)

A detention hearing was held November 9, 2009. At the hearing, the magistrate judge determined that "there is probable cause for Mr. Harris to proceed to trial in this case.

Additionally, after conducting a detention hearing under the Bail Reform Act, I conclude that the facts require the defendant to be detained pending trial." (Tr. of 11/9/2009 Detention Hr'g (Doc. No. 40, Ex. 1) at 43.) The magistrate judge entered an order of detention for defendant pending trial. (Doc. No. 29.)

After defendant moved for review of the order of detention, this court held a de novo hearing on January 12, 2010, and January 27, 2010. After reviewing the transcript of the November 9, 2009 detention hearing and taking into consideration the evidence and proffers of evidence presented at the January 12, 2010 and January 27, 2010 hearing, the court denied defendant's request for bond.

**II. Background of the Offense**

At the hearing before the magistrate judge, the government proffered evidence and submitted an affidavit of probable executed by Anthony Barravecchio ("Barravecchio"), a task force agent of the DEA who was involved in the criminal investigation of the criminal case in which defendant is charged. (Tr. of 11/9/2009 Detention Hr'g at 4-6; Aff. in Supp. of Compl. (Doc. No. 18, Ex. 1) ¶ 1.) Barravechhio also testified at the hearings before the magistrate judge and this court. Based upon those sources, the following factual background was developed.

On October 9, 2009, a criminal complaint was filed alleging Corey Gadsden conspired to distribute and possess with intent to distribute one kilogram or more of heroin. An affidavit executed by Barravecchio supported the allegations with respect to Corey Gadsden. (Tr. of 11/9/2009 Detention Hr'g at 5; Aff. in Supp. of Compl. ¶ 4.) The affidavit included information provided by a confidential informant. It was later learned from a different confidential informant that Corey Gadsden "put a hit out," meaning that Corey Gadsden wanted to kill the informant

2

who provided the information contained in the affidavit relating to Corey Gadsden.  (Tr. of 11/9/2009 Detention Hr'g  at 5; Aff. in Supp. of Compl. ¶ 5.)  This second confidential informant knew the other confidential informant well.  The second informant believed that Omar Gadsden, who is Corey Gadsden's brother, demanded $300,000 from him, in order to pay for a drug transaction that he entered into with Corey Gadsden and to compensate Corey Gadsden for the trouble associated with his arrest.  This confidential informant believed that Omar Gadsden's words conveyed intent to kill both himself and the other confidential informant.  (Aff. in Supp. of Compl. ¶¶ 4-8.)

On November 3, 2009, at approximately 4:00 a.m., the second confidential informant advised law enforcement officials that he heard gunshots outside the residence where he was staying.  Law enforcement officials discovered that the residence and a neighboring residence were riddled with bullet holes.  Omar Gadsden later called the second confidential informant, who believed that Omar Gadsden wanted to arrange a meeting to obtain $300,000 and to possibly harm him.  (Id. ¶¶ 9-11.)

On the basis of the telephone call, law enforcement officers determined that Omar Gadsden was located at the Best Western hotel in Greentree, Pennsylvania.  Law enforcement officers learned from hotel employees that Omar Gadsden was staying in room 215, and surveillance video revealed that two individuals, one of whom was defendant, left that room. The officers saw, in plain view, a firearm on the floor of a silver-colored Chevrolet Equinox parked in the hotel's lot.  (Id. ¶¶ 12-14.)  The law enforcement officers secured the weapon, and in the process of doing so, discovered an additional handgun and two live hand grenades.  (Id. ¶ 14.)  Bullet fragments found at the informant's residence have not yet been tested with the handguns recovered.  (Tr. of 11/9/2009 Detention Hr'g at 23-25.)  The officers found ski masks,

Halloween masks, and a baseball bat in the vehicle. (Tr. of 1/12/2010 Detention Hr'g (Doc. No. 57) at 15.) The relevant events happened several days after Halloween. (Id. at 20.) A black jacket was found in the same automobile as the weapons. Video surveillance from a nearby K-Mart store revealed that defendant was wearing a jacket like the jacket found in the automobile and entered the store accompanied by Omar Gadsden. (Id. at 15-16.) The officials found in the vehicle a photograph that depicted defendant and Omar Gadsden together. This photo, however, was not produced to the court. (Id. at 17-18.)

Demarco James ("James") was a co-conspirator with respect to the drug conspiracy. After being arrested, James told authorities that, while in Pittsburgh, Omar Gadsden ordered him to drive to New Jersey, pick up defendant, and bring defendant to Pittsburgh. (Id. at 22-24.) James picked up defendant, and the two spoke briefly about the alleged conspiracy to retaliate against the witness. Barravecchio testified:

> Q. You also testified -- it went by kind of fast. I didn't catch what your testimony was, but I believe it related to a comment by Mr. [James], and please correct me if it's incorrect, something about an exchange about someone not wanting to go to Pittsburgh to kill a witness and someone else saying I don't give a f-u-c-k?
>
> A. Yes.
>
> Q. Who said what in that exchange?
>
> A. [James] didn't want to be a part of it as he was driving Reginald Harris here and Reginald's response was he didn't give a fuck.
>
> Q. Okay. So Mr. [James] -- I don't want to rehash what was gone over in the previous hearing, but Mr. [James] was dispatched by Omar to pick up Reggie?
>
> A. From what I understand.
>
> Q. Not to transport him in Mr. [James]'s car but transport him in the Equinox?

4

>A. It belongs to Omar's wife.
>
>Q. Mr. [James] said it was his understanding that the purpose for the two of them to come to Pittsburgh was when they got here, to somehow participate in the killing of these witnesses, a robbery followed by a killing?
>
>A. Correct.
>
>Q. So the comment that you're referring is [James] told you that he told Reggie I don't want to kill these witnesses in Pittsburgh?
>
>A. [James] didn't, yes.
>
>Q. And this is what he told to Reggie?
>
>A. He told Reggie he didn't want to come to Pittsburgh and do it and the response from Reggie was I don't give a fuck.

(Id. at 23-24.)  James complied with Omar Gadsden's orders and brought defendant to Pittsburgh because James said he was afraid of Omar Gadsden.  (Id. at 24.)

On December 3, 2009, James was charged with conspiracy to distribute heroin in connection with his involvement in the Gadsdens' drug conspiracy.  (See United States v. James, Crim. No. 09-322 (W.D. Pa.).)  James did not come forward with the information pertaining to the conversation with defendant until after James was arrested.  (Tr. of 1/12/2010 Detention Hr'g at 21.)

The same weekend that James traveled to New Jersey to pick up defendant, Omar Gadsden unsuccessfully solicited another individual to "rob and kill witnesses."  (Id. at 25.)  This person stated that Omar Gadsden "talked about killing witnesses with grenades and guns."  (Id.)  This individual did not provide this information to authorities until after it was revealed in a public courtroom that handguns and grenades were found in the Equinox.  (Id.)  This individual had no information with respect to defendant.  (Id. at 26-27.)

5

Defendant and Omar Gadsden became acquainted with each other while serving time in prison. (Id. at 26.)

### III. Defendant's Personal Background[1]

Defendant was arrested for this crime on November 3, 2009. James picked up defendant on November 1, 2009. At that time, defendant was on probation in the state of New Jersey, and one of the conditions of his probation was that he remain within the state, unless he left for less than 24 hours or obtained permission to leave for a longer period of time. The probation officer in New Jersey filed a violation of probation statement asserting that, on the weekend defendant was arrested, he left the state of New Jersey without permission for more than 24 hours. The violation of probation statement also contained other alleged violations, including testing positive for THC in September 2009 and being arrested for possession and use of a controlled dangerous substance.

Defendant has a lengthy criminal history. Defendant's prior convictions in New Jersey include, inter alia: (1) October 14, 1994, for possession of a controlled dangerous substance or analog and for possessing a controlled dangerous substance on school property, (2) December 8, 1995, for possessing a controlled dangerous substance on school property, (3) May 5, 2000, for distribution of heroin or cocaine, (4) November 15, 2001, for possessing with intent to distribute a controlled dangerous substance within 1,000 feet of a school, (5) January 3, 2002, for distributing, dispensing, and possessing a controlled dangerous substance on school property, and (6) June 30, 2009 for possessing a controlled dangerous substance on school property. Defendant

---

[1] Defendant's personal background information was obtained from the Pretrial Services Report and Memorandum, dated January 12, 2010, as supplemented by the information obtained from New Jersey and presented to the court and the parties prior to January 27, 2010.

was incarcerated from May 5, 2000 until October 19, 2000, and from June 21, 2001 until February 9, 2007.

With respect to the November 15, 2001 conviction, the actions underlying the offense occurred on June 6, 2001 in Jersey City, New Jersey. Defendant was arrested the following day, June 7, 2001, and was granted bail in the amount of $40,000. Defendant posted bail on June 12, 2001.

With respect to the January 3, 2002 conviction, the actions underlying the offense occurred on June 20, 2001 in Jersey City, New Jersey. Defendant was arrested on June 21, 2001. The November 15, 2001 and January 3, 2002 convictions were merged for sentencing, and defendant was sentenced to a term of imprisonment of seven years. After serving this sentence, defendant was released on February 9, 2007.

Defendant has several pending criminal charges. On November 23, 2008, defendant was arrested in Newark, New Jersey for bail jumping and possession of a controlled dangerous substance or analog. On February 27, 2009, defendant was arrested in Newark, New Jersey for bail jumping. On September 2, 2009, defendant was arrested in Jersey City, New Jersey for possession and use of a controlled dangerous substance.

During the four months preceding his arrest for this case, defendant worked for his uncle, Earl Lovely, cleaning up construction sites for $80 per day. His estimated monthly earnings were $500. Prior to working for his uncle, he was employed between 2007 and 2008 at Red Roof Inn in Secaucus, New Jersey, in the laundry department. He was laid off from this position. He was incarcerated from 2001 to 2007, and did not have any identified employment prior to his incarceration. Defendant does not have any assets or liabilities.

Defendant proffered that his mother, Jane Minus, would be an appropriate third-party

custodian.  She resides in Atlanta.  (Id. at 27.)  She runs a catering business, in addition to other employment.  The catering business is currently understaffed, and defendant received training in the culinary arts while imprisoned.  Defendant argued that while on release, he could obtain employment in his mother's business.

*Standard*

The court's standard of review for reviewing a magistrate judge's decision regarding bail is de novo. United States v. Delker, 757 F.2d 1390, 1394 (3d Cir. 1985).

*Discussion*

**I. Introduction**

The structured system of the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. See United States v. Lemos, 876 F. Supp. 58, 59 (D.N.J. 1995).  The court is charged with determining whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(f).  Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release.  If no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

**II. Rebuttable presumption**

Section 3142(e)(1) of the Bail Reform Act provides, in pertinent part:

> If, after a hearing pursuant to the provisions of subsection (f) . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial. . . .

18 U.S.C. § 3142(e)(1).

In this case, a rebuttable presumption applies that no conditions or combinations of conditions will reasonably assure the safety of the community.[2]  Section 3142(e)(2) provides:

> In a case described in subsection (f)(1) of this section, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community if such judicial officer finds that--
>
> (A) the person has been convicted of a Federal offense that is described in subsection (f)(1) of this section, or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed;
>
> (B) the offense described in subparagraph (A) was committed while the person was on release pending trial for a Federal, State, or local offense; and
>
> (C) a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in subparagraph (A), whichever is later.

18 U.S.C. § 3142(e)(2).

This is a case described in § 3142(f)(1), which includes those cases involving "a crime of violence."  Defendant is charged with conspiracy to violate 18 U.S.C. § 1513, which makes it

---

[2] Once the full extent of defendant's criminal history was made known, defendant did not dispute the application of the rebuttable presumption in this case.

9

illegal to kill, attempt to kill, bodily injure, threaten to injure, damage property of another, or threaten to damage property of another in retaliation against a person who provided to law enforcement officers information relating to the commission or possible commission of a federal crime. Crimes of violence are those offenses in which an element is "the use, attempted use, or threatened use of physical force against the person or property of another," or in which there is "a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16.[3]

The court finds that defendant was convicted of a state offense "that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed." 18 U.S.C. § 3142(e)(2)(A). In particular, defendant on November 15, 2001 was convicted of possession with intent to distribute a controlled dangerous substance within 1,000 feet of a school.

The offense underlying the November 15, 2001 conviction was committed while defendant was on release pending trial for another state offense. Defendant was arrested on June 7, 2001 in Jersey City, New Jersey, for various drug offenses that were committed on June 6, 2001. On the day of the arrest, defendant was granted bail in the amount of $40,000. Bail was posted on June 12, 2001. Defendant thereafter committed the above-referenced offense on June 20, 2001, and was arrested on June 21, 2001 in Jersey City, New Jersey.

The two June 2001 offenses were merged and on February 14, 2002, defendant was sentenced to a term of imprisonment of seven years. Defendant was released from custody on February 9, 2007. The offense defendant is currently charged with in this court was committed in 2009, which is within five years of the date on which defendant was released from

---

[3] Defendant conceded that he is charged with a crime of violence. (Tr. of 1/12/2010 Detention Hr'g at 8.)

10

imprisonment. Since all the requirements of the rebuttal presumption set forth in § 3142(e)(2) are met, it is presumed that no conditions or combinations of conditions will reasonably assure the safety of the community.[4] Cf. United States v. Hodge, No. 09-24, 2009 WL 2170052, at *2 (D.V.I. July 2, 2009) (holding that the § 3142(e)(2) presumption did not apply, because subsection (B) was not met).

**III. The § 3142(g) factors**

A defendant may offer evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released pending trial. A defendant must produce only "some evidence" to rebut the presumption set forth in § 3142(e). United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). The quantum of evidence required to rebut the presumption is not high. Rather, the defendant need only come forward with credible evidence conflicting with the presumption. Id. at 383. When a defendant produces conflicting evidence the presumption, however, does not disappear. The rebutted presumption retains evidentiary weight. See United States v. Carbone, 793 F.2d 559, 560-61 (3d Cir. 1986) (per curiam); see also United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam).

In producing evidence to rebut the presumption, a defendant looks to the four factors set

---

[4] The § 3142(e)(2) presumption only relates to the safety of the community; that section does not create a presumption that defendant is a risk of flight. Although the government only need to prove defendant is a risk of flight by a preponderance of the evidence, United States v. Himler, 797 F.2d 156, 161 (3d Cir. 1986), the court concludes that the government did not offer sufficient evidence to establish that defendant was a flight risk. The court was not presented with any evidence that defendant previously failed to appear in court when required to do so or that he had taken actions indicating a risk of flight. See id. at 161-62 ("The purpose of a Section 3142(e) risk of flight determination . . . is to secure the appearance of the accused at trial.") (citing United States v. Maull, 773 F.2d 1479 (8th Cir. 1989) (risk of flight shown by prior attempt to leave the country in order to flee prosecution); United States v. Vortis, 785 F.2d 327 (D.C. Cir. 1986) (risk of flight shown by possession of fraudulent passports and a planned trip to Liberia)). The remainder of the discussion, therefore, only addresses the issues with respect to the

11

forth in § 3142(g) which the court must consider in determining whether pretrial detention is warranted.  See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (to determine whether the presumption of dangerousness has been rebutted, the court should consider the factors set forth in § 3142(g)).   The four factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

The court concludes that it is a close question whether defendant rebutted the presumption that no condition or combination of conditions would reasonably ensure the safety of the community if he is released.  The court will, for the purpose of deciding this matter, consider the presumption to have been rebutted.

---

safety of the community.

Assuming that defendant rebutted the presumption, the government, by clear and convincing evidence, must persuade the court that no condition or combination of conditions would reasonably ensure the safety of the community if defendant were to be released. 18 U.S.C. § 3142(f); see Perry, 788 F.2d at 115 ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness."). The same factors set forth in 18 U.S.C. § 3142(g) are relevant to this determination. See United States v. Giles, No. A-96-CR-22, 1996 WL 172659, at *2 (N.D.N.Y. Apr. 11, 1996) ("Once a defendant introduces rebuttal evidence, I still must consider the presumption along with the[] factors [set forth in § 3142(g)].").

Applying § 3142(g)'s factors to the instant case, this court first concludes that the defendant was indicted for a serious offense. He is charged with conspiracy to retaliate against an informant whose information concerning drug activities led to the arrest of Corey Gadsden. It is alleged that defendant traveled from New Jersey to Pittsburgh for the purpose of assisting Omar Gadsden with the retaliation. After defendant arrived in Pittsburgh, an informant heard shots outside the informant's residence one morning, and bullet holes were found in that residence and in the neighboring residence. Weapons were later found in the vehicle in which defendant was transported to Pittsburgh.

Second, in considering the weight of the evidence against defendant, the court examined all the evidence presented at the hearings, including the evidence outlined above in the background section. Several informants relied upon the government remain anonymous, and the court accordingly ascribes less weight to any information obtained from those sources. One informant, James, was instructed by Omar Gadsden to drive defendant to Pittsburgh and had a conversation with defendant about the retaliation. James, however, was involved in the

13

Gadsdens' drug conspiracy. James did not reveal the details of his conversation with defendant until after his arrest. No evidence of a relationship between defendant and Corey Gadsden was presented. In sum, there was some evidence introduced at the detention hearing, but it is not overwhelming. This factor is somewhat neutral.

Third, defendant has family ties to his mother who resides in Atlanta. Defendant did not present evidence, however, of prior residence in Atlanta, nor did he present evidence of any other ties to the Atlanta community. Although defendant proffered that his mother was willing to serve as a custodian and that defendant could work in his mother's catering business in Atlanta, the court notes the logistical problems of such an arrangement, given that defendant is currently on probation for a New Jersey conviction and one of the conditions of his probation is that he cannot leave New Jersey for more than 24 hours without prior approval. No evidence was presented with respect to suitable custodians in New Jersey. Other considerations with respect to the third factor weigh against granting defendant pretrial release. Defendant does not have a meaningful employment history or financial resources. Particularly troubling to the court is defendant's lengthy criminal history involving drug trafficking and commission of offenses while on release. Also problematic is evidence of defendant's use of illicit drugs, including a positive test for THC as recently as September 2009, which was in violation of a condition of probation he was then serving. At the time of the instant offense, defendant was on probation as part of a sentence under New Jersey law. He was in violation of the conditions of that term of probation by being arrested and by being present in Pittsburgh for longer than 24 hours.

Finally, danger to the community would be present in this case if defendant is released. The court notes that the crime defendant is charged with in this case is a crime of violence. Violence is not the only danger to the community this court must consider, even though he is

charged with a crime of violence.  See United States v. Bess, 678 F. Supp. 929, 933(D.D.C. 1988) (noting that evidence of a defendant's dangerousness is not limited to evidence of the elements of the crime with which he or she is charged; "[i]ndeed, evidence of a defendant's dangerousness can be virtually unrelated to the charged offense, as in the case where there is evidence that the defendant has threatened potential witnesses or jurors, or perhaps more telling, where the evidence of defendant's dangerousness relates to prior offenses.")  The court must consider whether if released defendant might continue to traffic in illicit narcotics, and in this case there is a danger that defendant will engage in drug trafficking.  See United States v. Perry, 788 F.2d 100, 111 (3d Cir. 1986) (danger to community arises from the likelihood that the defendant will, if released, commit one of the proscribed federal offenses); cf. United States v. Strong, 775 F.2d 504, 507 (3d Cir. 1985) (statutory language unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community).  Defendant's criminal history indicates that he repeatedly engaged in drug trafficking.  Defendant was convicted on May 5, 2000, November 15, 2001, and January 3, 2002 for that kind of conduct, and most recently defendant has a pending charge for possession and use of a controlled dangerous substance.

Even if defendant had rebutted the § 3142(e) presumption, this court finds after considering the record as a whole that there is no condition or set of conditions which would reasonably assure that defendant would not engage in drug trafficking on release.  In light of defendant's background and that the presumption – there is no combination of conditions that would reasonably assure the safety of the community if defendant is released – retains evidentiary weight, Carbone, 793 F.3d at 560-61, this court cannot conclude that any condition or set of conditions, if imposed, would reasonably assure the safety of the community if defendant

were released pending trial.

### *Order*

THEREFORE, this 3rd day of February, 2010, IT IS HEREBY ORDERED that the defendant shall continue to be detained pending trial and committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, to persons awaiting or serving sentences or being held in custody pending appeal.

IT IS FURTHER ORDERED that, upon order of the court or upon request of an attorney for the government, a person in charge of the correctional facility in which the defendant is confined shall deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

By the court:

 /s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc:  Counsel of Record
      United States Pretrial Services/Probation Office