IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 09-305 |
| ) | |
| REGGIE HARRIS, ) | |
| ) | |
| Defendant. ) | |

CONTI, District Judge.

# MEMORANDUM OPINION AND ORDER

On February 11, 2011, defendant Reggie Harris ("defendant") filed a motion to reconsider order of detention. (ECF No. 141.) This court held a hearing on March 2, 2011 and March 18, 2011, at which evidence and proffers of evidence were presented. Taking into consideration the evidence presented at the hearing, the pleadings and record in this case, and the arguments of counsel, this court denied defendant's request for release. This memorandum opinion and order sets forth the reasons for the court's decision, which were detailed on the record.

*Background*

I. **Procedural background**

On December 1, 2009, a grand jury returned a superseding indictment at criminal number 09-305 charging defendant in count three with conspiracy to retaliate against a witness or information in violation of 18 U.S.C. § 1513(f). (ECF No. 30.) On January 4, 2011, a grand jury returned a second superseding indictment charging defendant with the same conspiracy charge in

count three.  (ECF No. 125.)  The maximum sentence for count three is a term of imprisonment of not more than twenty years.

A detention hearing was held on November 9, 2009.  At the hearing, the magistrate judge determined that "there is probable cause for Mr. Harris to proceed to trial in this case.  Additionally, after conducting a detention hearing under the Bail Reform Act, I conclude that the facts require the defendant to be detained pending Trial.  (Detention Hr'g Tr. Nov. 9, 2009 (ECF No. 40), Ex. 1 at 43.)  The magistrate judge ordered an order of detention pending trial.  (ECF No. 29.)

On December 18, 2009, defendant filed a motion to revoke order of detention.  (ECF No. 40.)  This court held a de novo hearing on January 12, 2010, and January 27, 2010.  The court denied defendant's request for bond and issued a memorandum opinion and order which set forth the reasons for the court's decision that were detailed on the record.  (ECF No. 68.)[1]  On March 18, 2011, the court denied defendant's request for reconsideration of that order.

## II.     Evidence presented during the hearing for reconsideration

During the hearing on defendant's motion to reconsider his detention, defendant made the following arguments: (1) hand grenades obtained during defendant's arrest were not "live" but were inert replicas; (2) contrary to previous testimony, a photograph alleged to contain defendant flashing a gang symbol was not the defendant; (3) the testifying agent perjured himself with respect to the picture alleged to contain defendant; (4) the delay in going to trial was caused by the government; and (5) if released, defendant's family would provide him a place to stay and he was offered employment.

---

[1] For purposes of the instant motion for reconsideration, the court will assume familiarity with its prior memorandum opinion dated February 3, 2010.  United States v. Harris, No. 09-305, 2010 WL 456920 (W.D. Pa. Feb. 3, 2010) (ECF No. 68).  The operative facts will be discussed only to the extent they are directly relevant to the issues raised in support of (or in opposition to) the motion for reconsideration.

The government responded that, (1) the grenades were "live" to the extent the fuse could be detonated; (2) the testifying agent did not commit perjury because he reached the conclusion in good faith that defendant was pictured in the photograph; (3) defendant was responsible for eight months of the delay because he requested several extensions of time; and (4) defendant's criminal history and probation violations weighed against his release.

The court heard testimony from officers Robert Synan ("Synan") and L.D. Smithers ("Smithers") who were employed as police officers and bomb technicians for the Allegheny County Police department. (Hr'g Tr. Mar. 2, 2011 at 28, 49.) Synan was employed by the police department for four and a half years, id. at 28, and Smithers had sixteen and a half years' experience as a bomb technician. (Id. at 49.)

Synan testified that, after personally examining the grenades in question, the fuse inside the grenades was live and it could explode if the pin was pulled. (Id. at 35.) The grenades could explode despite the lack of an explosive compound inside the body of the grenade and despite the presence of a hole in the bottom of the grenade. (Id.) The explosion resulting from detonating the fuse could damage a hand or "shred some of your fingers." (Id.) Synan explained that the grenades could be made more dangerous, or "live full fragmentation" grenades, by adding explosive powder and sealing the holes; a procedure a layperson could accomplish in fifteen minutes by purchasing ten or twelve dollars-worth of materials at a Wal-Mart . (Id. at 36-37.)

Synan noted that military practice grenades are normally painted blue, but the grenades at issue were painted black. (Id. at 37.) Synan opined that it was possible the grenades were either altered from their original blue color as practice grenades, or they were official grenades without any powder. (Id.) When asked to clarify the type of grenades at issue, Synan concluded they

3

were M69 grenades, and declined to classify them as "training" grenades because they were painted black. (Id. at 47.)

Smithers testified that, after the grenades were recovered, the pins were pulled and they exploded because the fuses were live, despite the absence of any additional material inside the body of the grenades. (Id. at 51.) Smithers explained that if the grenades were filled with explosive powder and sealed at their bottoms, they "would have functioned as a grenade is designed to function. Basically, blowing itself apart into small pieces which would fly out in all directions and injure or kill somebody." (Id. at 52.) Smithers concluded that the grenades were "live" grenades. (Id. at 56.)

*Standard of review*

The Court of Appeals for the Third Circuit has recognized that "at some point due process may require a release from pretrial detention," and "a determination under the Bail Reform Act that detention is necessary is without prejudice to a defendant petitioning for release at a subsequent time on due process grounds." United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986). When considering a motion to reconsider an order of detention, a court must consider the "factors relevant in the initial detention determination, such as the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits," as well as the "length of detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has needlessly added to the complexity." Id. The length of the detention is critical due to the "crucial liberty interest at stake." United States v. Suppa, 799 F.2d 115, 120 (3d Cir. 1986).

*Discussion*

The structured system of the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. See United States v. Lemos, 876 F. Supp. 58, 59 (D.N.J. 1995). The court is charged with determining whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(f). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

I.  **Rebuttable presumption**

Section 3142(e)(1) of the Bail Reform Act provides, in pertinent part:

> If, after a hearing pursuant to the provisions of subsection (f) . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial. . . .

18 U.S.C. § 3142(e)(1).

In this case, a rebuttable presumption applies that no conditions or combinations of conditions will reasonably assure the safety of the community. Section 3142(e)(2) provides:

> In a case described in subsection (f)(1) of this section, a rebuttable presumption arises that no condition or combination of conditions

> will reasonably assure the safety of any other person and the community if such judicial officer finds that--
>
>> (A) the person has been convicted of a Federal offense that is described in subsection (f)(1) of this section, or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed;
>>
>> (B) the offense described in subparagraph (A) was committed while the person was on release pending trial for a Federal, State, or local offense; and
>>
>> (C) a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in subparagraph (A), whichever is later.

18 U.S.C. § 3142(e)(2).

This is a case described in § 3142(f)(1), which includes those cases involving "a crime of violence." Defendant is charged with conspiracy to violate 18 U.S.C. § 1513, which makes it illegal to kill, attempt to kill, bodily injure, threaten to injure, damage property of another, or threaten to damage property of another in retaliation against a person who provided to law enforcement officers information relating to the commission or possible commission of a federal crime. Crimes of violence are those offenses in which an element is "the use, attempted use, or threatened use of physical force against the person or property of another," or in which there is "a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16.[2]

The court held in its February 3, 2010 memorandum opinion that all the requirements of the rebuttal presumption set forth in § 3142(e)(2) were met, and that it was presumed that no conditions or combinations of conditions would reasonably assure the safety of the community.

---

[2] Defendant conceded that he is charged with a crime of violence. (Detention Hr'g Tr. Jan. 12, 2010 at 8.)

Cf. United States v. Hodge, No. 09-24, 2009 WL 2170052, at *2 (D.V.I. July 2, 2009) (holding that the § 3142(e)(2) presumption did not apply, because subsection (B) was not met).

## II. Section 3142(g) factors

A defendant may offer evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released pending trial. A defendant must produce only "some evidence" to rebut the presumption set forth in § 3142(e). United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). The quantum of evidence required to rebut the presumption is not high; rather, the defendant need only come forward with credible evidence conflicting with the presumption. Id. at 383. When a defendant produces conflicting evidence the presumption, however, does not disappear. The rebutted presumption retains evidentiary weight. See United States v. Carbone, 793 F.2d 559, 560-61 (3d Cir. 1986) (per curiam); see also United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam).

In producing evidence to rebut the presumption, a defendant looks to the four factors set forth in § 3142(g) which the court must consider in determining whether pretrial detention is warranted. See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (to determine whether the presumption of dangerousness has been rebutted, the court should consider the factors set forth in § 3142(g)). The four factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

The court concluded in its February 3, 2010 memorandum opinion that it was a close question whether defendant rebutted the presumption that no condition or combination of conditions would reasonably ensure the safety of the community if he is released. The court assumed for purposes of deciding the matter that the presumption had been rebutted.

Assuming that defendant rebutted the presumption, the government, by clear and convincing evidence, must persuade the court that no condition or combination of conditions would reasonably ensure the safety of the community if defendant were to be released. 18 U.S.C. § 3142(f); see Perry, 788 F.2d at 115 ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness."). The same factors set forth in 18 U.S.C. § 3142(g) are relevant to this determination. See United States v. Giles, No. 96-22, 1996 WL 172659, at *2 (N.D.N.Y. Apr. 11, 1996) ("Once a defendant introduces rebuttal evidence, I still must consider the presumption along with the[] factors [set forth in § 3142(g)].").

8

Violence is not the only danger to the community this court must consider, even though he is charged with a crime of violence. See United States v. Bess, 678 F. Supp. 929, 933 (D.D.C. 1988) (noting that evidence of a defendant's dangerousness is not limited to evidence of the elements of the crime with which he or she is charged; "[i]ndeed, evidence of a defendant's dangerousness can be virtually unrelated to the charged offense, as in the case where there is evidence that the defendant has threatened potential witnesses or jurors, or perhaps more telling, where the evidence of defendant's dangerousness relates to prior offenses"). A court must consider whether, if released, a defendant might continue to traffic in illicit narcotics, and in this case there is a danger that defendant will engage in drug trafficking. See United States v. Perry, 788 F.2d 100, 111 (3d Cir. 1986) (danger to community arises from the likelihood that the defendant will, if released, commit one of the proscribed federal offenses); cf. United States v. Strong, 775 F.2d 504, 507 (3d Cir. 1985) (statutory language unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community).

### III. Accetturo factors

"[D]ue process judgments should be made on the facts of individual cases[.]" Accetturo, 783 F.2d at 388. Applying the Accetturo factors to the defendant's newly discovered evidence, as well as the record as a whole, the court held at the reconsideration of detention hearing that there was still reason to conclude that there is no condition or set of conditions which would reasonably assure that defendant would not engage in *drug trafficking* on release – the same conclusion the court reached in its February 3, 2010 memorandum opinion. In that opinion, the court weighed the § 3142(g) factors and concluded that there was a danger defendant might continue to traffic in illicit narcotics, citing defendant's extensive criminal history indicating he repeatedly engaged in drug trafficking.

### a. Seriousness of the charges

At the hearing to reconsider defendant's detention, the court weighed the applicable Accetturo factors. First, the court considered the offense charged and found it contemplated violence and impacted the administration of justice because it involved witness retaliation. (Hr'g Tr. Mar. 18, 2011 at 30-31.) The court concluded defendant was charged with a very serious offense, and that factor weighed in favor of the government and defendant's continued detention. (Id.)

### b. Risk of flight or danger to the community

The court recognized that the evidence was mixed concerning the risk of flight or danger to the community factor. (Id. at 31.) There was some evidence presented that defendant had family ties in New Jersey and a cousin who was willing to be his custodian. (Id.) Defendant also had an offer for employment upon his release. (Id.) The court reaffirmed at the hearing that "[t]he basis for the detention was the danger to the community that could occur if the defendant were to be back in the community and re-engage in drug trafficking activity." (Id. at 29.) That decision was reinforced by a correction made on the record that one of defendant's prior offenses was a conviction for marijuana possession with intent to deliver rather than a possession conviction. (Id.) The court concluded that this factor weighed against defendant. (Id. at 32.)

### c. Strength of the government's case on the merits

Notably, in its memorandum opinion, the court considered the factor concerning the weight of the evidence against defendant to be "somewhat neutral." The court reaffirmed this conclusion at the reconsideration hearing, stating the evidence was not "particularly weighty." (Id. at 31.) Defendant's new evidence concerning the hand grenades and their inert features was weakened to the extent the government demonstrated the fuse inside the grenades rendered them

10

live and that it was possible for the grenades to become "live full fragmentation" grenades at any time if an individual deposited gun powder inside the grenades and sealed the openings. While the photograph lacked any evidentiary value because defendant was not pictured, the court did not rely on it. In its February 3, 2010 memorandum and order detaining defendant, the court did not review the photograph before rendering a decision. The court concluded that this factor did not weigh in favor of the government. (Id.)

### d. Additional Accetturo factors

The final Accetturro factors contemplate the length of the detention, the complexity of the case and whether the strategy of one side or the other has needlessly added to the complexity. Defendant has been detained for approximately nineteen months, with eight months attributable to his requesting extensions of time to file pretrial motions. The government conceded this is not a complex case, and the reasons for the additional eleven-months delay was attributed to the co-defendants requesting extensions of time to file pretrial motions. (Id. at 33.) A significant period of the delay, therefore, was not the fault of defendant or the government. The court considered these final factors to be evenly balanced. (Id. at 34.)[3]

*Conclusion*

Taking into consideration the evidence presented at the hearing, the pleadings and record in this case, the arguments of counsel and the applicable legal standards, this court could not find that the crucial liberty interests under due process were affected at this stage and denied defendant's request for release without prejudice.

---

[3] The court was mindful that, even if defendant were permitted to be released on bond, he would not in fact be released because there is a detainer on him from New Jersey for probation violations. (See Hr'g Tr. Mar. 18, 2011 at 34.)

# **ORDER**

AND NOW, this 3rd day of May, 2011, upon consideration of the motion to reconsider the order of detention (ECF No. 141) filed by defendant Reggie Harris on February 11, 2011, the motion is hereby DENIED without prejudice.

By the court:

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge